James Clarence THOMPSON, Plaintiff,

v.

Harold Felder McCOY, Individually and as Servant of James P. McKeown, III, d/b/a Piggly Wiggly Store No. 61, and James P. McKeown, III, d/b/a Piggly Wiggly No. 61, Defendants.

Civ. A. No. 76–1406.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 1, 1976.

---

2.  Statistics and boundaries appear at 376 F. Supp. at 694, and in the exhibits.

Robert John Murphy, Jr., Charleston, S. C., Haskell & Haskell, Columbia, S. C., for plaintiff.

Douglas McKay, Jr., of McKay, Sherrill, Walke · & Townsend, Columbia, S. C., for Harold Felder McCoy.

Jackson L. Barwick, Jr., of Belser, Baker, Belser, Barwick & Toal, Columbia, S. C., for James P. McKeown, III.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

HEMPHILL, District Judge.

The matter before this court is the defendant James P. McKeown, III's motion to dismiss plaintiff's action under 42 U.S.C. § 1983 for failure to state a claim upon which relief can be granted and to dismiss the common law claim against him for lack of pendent jurisdiction.

Through his complaint, the plaintiff alleges that, while shopping in the defendant McKeown's establishment, he was accosted, falsely accused, arrested and subsequently assaulted by the defendant McCoy, who was at the time employed by McKeown as a security guard. As a result of this occurrence the plaintiff has brought suit against both McCoy and McKeown under 42 U.S.C. § 1983 and under the state common law actions of false arrest, false imprisonment and malicious and warrantless prosecution. It is apparent from the complaint, as well as the plaintiff's brief in opposition to defendant's motion, that his claim against the defendant McKeown is based on the doctrine of *respondeat superior,* as there are no allegations that defendant McKeown participated in this incident in any fashion. The § 1983 claim is before the court under the grant of jurisdiction found in 28 U.S.C. § 1343, while the court's power to hear the common law claims is based upon the principles of pendent jurisdiction. The parties agree that jurisdiction over the common law claims depends solely on the validity of the § 1983 claim.

The defendant McKeown contends, quite simply, that the South Carolina Private Detective and Private Security Agency's Act, South Carolina Code Ann. § 56–646.1, et seq. (Cum.Supp.1975), which regulates the use of security guards in private business, fails to bestow the necessary authority upon him to satisfy the state action requirement imposed by 42 U.S.C. § 1983. Additionally, but in no way of secondary importance, he argues that, even if the state action requirement were satisfied, that the doctrine of *respondeat superior* does not apply to actions under § 1983.

■ In order to determine whether the actions taken by the defendants were "under color of state law", with regards to § 1983, the court must look to the source of the power or authority which was supposedly abused and find if such power or authority existed by virtue of a grant from the State. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). The statute under examination here requires any business maintaining employees on its premises as security guards to be licensed by the State of South Carolina. South Carolina Code Ann. § 56–646.10 (Cum.Supp.1975).[1] This licensing provision requires that any employer hiring security guards register and supply extensive information to the South Carolina Law Enforcement Division (SLED) concerning the prospective employee's background and training. (SLED), in turn, must approve each applicant as being suitable for employment as a security guard. The most important feature of the Act as it relates to state action, is § 56–646.13,[2] which clothes state-approved private security guards with "the authority and power which sheriffs have to make arrests of any persons violating or charged with violating any of the criminal statutes of this state," while on the employer's premises.

■ Actions taken under this system of intensive regulation, combined with the statutory grant of police authority to approved applicants, reaches the necessary degree of state control and cooperation to be properly characterized as action taken "under color of state law." The statutory grant of power in this case is closely akin to that which was found to constitute state action in the case of *DeCarlo v. Joseph Horne & Co.*, D.C., 251 F.Supp. 935 (1966), where the State of Pennsylvania, through its "Professional Thieves Act" authorized

1. S.C.Code Ann. § 56–646.10 provides. Certain employers to be licensed.—(a) Any person or corporation employing persons to do private security work on the premises and in connection with the affairs of such employer only, and there exists an employer-employee relationship, shall be required to make application to the Division for a license. In order to secure a license, such person or corporation must:

(1) Satisfy the Division that such person or corporation is financially responsible;

(2) Satisfy the Division that such person or corporation has a competent training officer and an adequate training program with a curriculum approved by the Division or that adequate training will be obtained from another source;

(3) Pay an annual license fee of twenty-five dollars. (b) Any person or corporation licensed in accordance with subsection (a) shall within twenty days of the beginning of employment of a person in private security furnish the Division with the name, photograph, fingerprints and such other information as required by the Division in order to properly register such employees with the Division. The Division shall furnish forms for registration and each person so registered shall pay an annual registration fee of five dollars. No person shall be approved for employment who has been convicted of a felony or any crime involving moral turpitude that would tend to question his honesty or integrity, or who is an alcoholic, drifter, vagrant or person with a record of mental illness, or who has been discharged from the military service under other than honorable conditions, or who has been refused a license under the provisions of this chapter for any reason except minimum experience, or whose license, having been granted, has been revoked or is under suspension. Upon being satisfied of the suitability of the applicant for employment, the Division shall register the employee and so notify the licensee. The licensee shall notify the Division within five days of the termination of employment of any registered employees. The Division may waive the submission of fingerprints and photographs for any employee who has been employed by a person licensed under this chapter within the previous six months. Such registration shall be for one year and application for renewal shall be on a form furnished by the Division. (1973 (58) 673).

2. S.C.Code Ann. § 56–646.13 provides: Licensees to have police powers.—Any person covered by the provisions of § 56–646.9 or properly registered or licensed under this chapter who is hired or employed to patrol, guard or render a similar service on certain property shall be granted the authority and power which sheriffs have to make arrest of any persons violating or charged with violating any of the criminal statutes of this State, but shall have such powers of arrest only on the aforementioned property.

company security officers to make valid legal arrests of persons "on the premises for an unlawful purpose." The reasoning of the court in that situation is equally applicable to the present case:

> I can see no practical or substantial legal distinction between this case where a store detective is legally entitled to make an arrest under a state statute specifically implemented for this purpose which implicitly clothes the defendant with such right, and in so doing, violates the accused's constitutional rights, and a situation where a police officer in making an arrest by virtue of his authority impinges upon the same rights.

In *Williams v. United States*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951), the Supreme Court treated in a similar fashion the acts of a Florida private detective who held a "Special Police Officer's Card" from the City of Miami. Although the case involved an alleged coerced confession under 18 U.S.C. § 242, the standards for determining "color of state law" and the reasoning of the court are equally applicable to actions under 42 U.S.C. § 1983. This court is aware of several cases holding that actions under state laws which allow a brief detention of suspected shoplifters by shopkeepers have not constituted action "under color of state law". *Battle v. Dayton-Hudson Corp.*, 399 F.Supp. 900 (1975), *Warren v. Cummings*, D.C., 303 F.Supp. 803 (1969), *Weyandt v. Mason's Stores, Inc.*, D.C., 279 F.Supp. 283 (1968). However, in all of these cases the grant of police power was more restricted than the South Carolina Act and none of the examined statutes had required registration, screening and approval of applicants by a central state law enforcement agency.

The defendant McKeown urges that the actual state police authority conferred by § 56–646.13 runs only to the security guard and not to the employer, with the effect being the only actions of the employee are "under color of state law." The argument of the plaintiff, who contends that the power of the state "runs through" the employer to the employee, is more persuasive. Under § 56–646.10 of this Act, it is the employer who enlists the assistance of state authority and benefits from it. The employer must register with the state, pay registration fees, and procure proper training for its security employees. Although the actual law enforcement authority goes to the security employee, it is granted only through the efforts and for the benefit of the employer. For this reason, any act committed by an employer pursuant to this statute, or apparently under authority granted by it, would be considered "under color of state law" and would be actionable under 42 U.S.C. § 1983 if the other requisites of such an action were present.

■ The defendant McKeown's primary argument, however, is that the doctrine of *respondeat superior* is inapplicable in actions under 42 U.S.C. § 1983 and, in absence direct involvement on his part in the alleged acts, the action against him should be dismissed.

The plaintiff, in opposition to the defendant's motion, relies on the case of *Hill v. Toll*, D.C., 320 F.Supp. 185 (1970), for the contention that *respondeat superior* is a viable theory in actions under § 1983. In that case, the court held a surety company liable for actions of two of its agents purely under the theory of *respondeat superior* in a § 1983 action. At that time, the court remarked, "no court has yet faced the issue of whether the doctrine of *respondeat superior* applies to 1983." 320 F.Supp. at 188. Since that decision the circuits have spoken clearly to the contrary and the Fourth Circuit has said recently that "the doctrine of *respondeat superior* is inapplicable in actions under 42 U.S.C. § 1983 where the sole relief sought is money damages." *Shaver v. Morrissey*, 539 F.2d 706 (4th Cir. 1976).[3] Other circuits are in general agreement

---

**3.** *See, Bursey v. Weatherford*, 528 F.2d 483 (4th Cir. 1975) where recovery was allowed against the Chief of the South Carolina Law Enforcement Division only because he directly partici- pated in the allegedly improper acts. The court indicated that liability would not lie under the theory of *respondeat superior* alone.

with this principle. *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973) (policemen-police chief); *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971) (corrections officer-warden). A clear statement of this principle is found in the district court case of *Knipp v. Weikle*, D.C., 405 F.Supp. 782 (1975) where the court, considering whether a sheriff should be held liable for the actions of a deputy under § 1983, said:

> This court has consistently held that the doctrine of *respondeat superior* is inapplicable and actions brought under 42 U.S.C. § 1983. Therefore, absent an allegation that a named-defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in *some* manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983. (citations omitted)

The case of *Draeger v. Grand Central Inc.*, 504 F.2d 142 (10th Cir. 1974) involved a consideration of the doctrine of *respondeat superior* applied to a factual situation very similar to the one before the court. In *Draeger* a private department store employed an off-duty policeman as a security guard and the guard allegedly violated the constitutional rights of the plaintiff. The court, without directly considering the question of state action on the part of the department store, said that the store could not be held liable for the acts of the defendant security guard under the theory of *respondeat superior*. That decision discussed two requirements for finding a private entity liable under § 1983, active participation in the allegedly improper acts and state action. In the present case there has been a finding of state action but there is no evidence or allegation to be found in the plaintiff's pleading of any active participation in this event on the part of the defendant McKeown. Since in the absence of such participation there can be no liability on his part under 42 U.S.C. § 1983, the complaint against the defendant McKeown on that cause of action should be dismissed. With the dismissal of the § 1983 action, this court is without jurisdiction to hear the common law claims and they, too, are dismissed.

Therefore, the defendant McKeown's motion is granted and the action against him before this court is dismissed.

AND IT IS SO ORDERED.