**Anthony MEROLA, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Ernest R. Frazier, Sr., Robert L. Strempek and Raymond C. Ingalls, Defendants.**

**No. 86 Civ. 2900 (MGC).**

United States District Court,
S.D. New York.

Feb. 12, 1988.

Altier, Wayne & Klein by Raymond Val Wayne and Sam Polur, New York City, for plaintiff.

Siff, Rosen & Parker, P.C. by Mark S. Landman, Amy Gallent, New York City, for defendants.

## OPINION

CEDARBAUM, District Judge.

This is an action brought under 42 U.S.C. § 1983 and New York State law alleging false arrest and imprisonment, malicious prosecution and illegal wiretapping. The plaintiff, Anthony Merola, was a sergeant on the police force of the National Railroad Passenger Corporation ("Amtrak"). He seeks damages from defendants Amtrak; Ernest R. Frazier, Sr., an Amtrak police officer; Robert L. Strempek, Chief of the New York Division of the Amtrak Police Department; and Raymond C. Ingalls, Amtrak's Chief of Police. This action was instituted in New York State Supreme Court, and was removed to this court.

The defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or in the alternative for summary judgment. They contend first that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, gives exclusive jurisdiction over this dispute to the arbitration boards that it establishes, and that therefore this court lacks jurisdiction. In the alternative, they contend that the complaint fails to state a claim under § 1983 because insufficient "state action" is alleged. For the reasons discussed below, defendants' motion is denied.

## BACKGROUND

The facts as alleged in the complaint are as follows. Merola, himself a police sergeant for Amtrak, was arrested on November 2, 1984, at the Midtown South Precinct of the New York City Police Department by defendant Frazier. Merola was charged

with violating N.Y. Penal Law § 265.10(7), which prohibits the unlawful disposition of firearms. He was booked, photographed and fingerprinted, and given an Appearance Ticket directing him to appear in Criminal Court on November 20, 1984. In all, he was compelled to remain in police custody for approximately seven hours.

On November 20, 1984, Merola was charged by information in Criminal Court with having unlawfully disposed of a firearm in or about October 1983 at Pennsylvania Station in New York City, in violation of N.Y. Penal Law § 400.00(16). After numerous adjournments for the purpose of obtaining corroborating affidavits, which had been requested by the Court, the criminal complaint and information were dismissed on March 15, 1985.

During this period, Amtrak was conducting its own investigation, which led to Merola's dismissal from the Amtrak police on May 30, 1985. The complaint in this case is silent concerning the investigation and dismissal, except for the allegation that the defendants wiretapped Merola's telephone conversations. However, defendants have submitted to the Court a copy of an award of Public Law Board No. 3962, which decided an appeal of Merola's dismissal. According to the Board's decision, Merola is alleged to have sold a loaded handgun in late 1983 or early 1984 in the Amtrak Police Locker Room in Penn Station. The departmental charges against him included the sale of the handgun, the arrest, his failure to assist in a criminal investigation of shootings in Penn Station involving a handgun of the same caliber as the one he had sold, his imperilling of the safety of Amtrak employees and patrons by selling the gun, and his failure to take enforcement action against the buyer of the handgun, whose possession of it was unlawful. An investigative hearing was held, and Me-

rola was dismissed. The dismissal was upheld by the Public Law Board.[1]

Merola instituted this action in March 1986. The first three counts of his complaint seek monetary relief under 42 U.S.C. § 1983. They allege false arrest and false imprisonment, malicious prosecution, and illegal wiretapping, all in violation of Merola's rights under the Fourth and Fourteenth Amendments. The fifth count of the complaint seeks damages for common law malicious prosecution. The fourth count seeks damages for common law false arrest and false imprisonment. Defendants have moved to dismiss the fourth count as barred by the New York statute of limitations. At oral argument of the motion to dismiss, plaintiff's counsel agreed to withdraw this count.

## DISCUSSION

### A. *The RLA and This Court's Jurisdiction*

Defendants' motion to dismiss for lack of jurisdiction is brought under Rule 12(b)(1). Defendants have submitted to the Court one significant document outside the pleadings—the Public Law Board award. The Court may consider matters outside the pleadings without converting a Rule 12(b)(1) motion into one for summary judgment. *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1010–11 (2d Cir.1986); *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976). I note that Merola has had ample time to submit material outside the pleadings in opposition to the motion, and that facts concerning jurisdiction are not peculiarly within the knowledge of defendants. *See Kamen*, 791 F.2d at 1011.

The RLA has been interpreted to separate employment disputes into different categories. *See Independent Union of*

---

**1.** In their memoranda of law, defendants refer to the Public Law Board as the "National Mediation Board." *See* 45 U.S.C. §§ 154–55. In fact, the Public Law Board is apparently an alternative board set up pursuant to 45 U.S.C. § 153 Second to resolve disputes otherwise referable to the Adjustment Boards. *See* Petition in *American Federation of Railroad Police, Inc. v.*

*National Railroad Passenger Corp.*, No. CV 86–4173 (E.D.N.Y.), attached as Exhibit B to defendants' Reply Memorandum. The Eastern District recently declined to transfer that action, which challenges the Public Law Board's award, to this District. *See* decision dated August 28, 1987.

*Flight Attendants v. Pan American World Airways, Inc.,* 789 F.2d 139, 140–41 (2d Cir.1986) (per curiam). Exclusive jurisdiction over "minor" disputes, "which involve grievances over the 'meaning or proper application of a particular provision' in an existing collective bargaining agreement," *id.* at 140, quoting *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), is vested in the labor-management adjustment boards created by the statute, *Flight Attendants,* 789 F.2d at 141, or in a Public Law Board chosen by the parties. *See* 45 U.S.C. § 153 First (i) and Second; *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* —— U.S. ——, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987). The jurisdiction of the federal courts over these disputes is limited to the narrow judicial review of the required railway arbitration proceedings. *See Andrews v. Louisville & N.R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565–66, 32 L.Ed.2d 95 (1972); *Watts v. Union Pacific R. Co.,* 796 F.2d 1240, 1243 & n. 3 (10th Cir.1986).

> In enacting this statutory scheme:

> Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts.

*Buell,* 107 S.Ct. at 1414 n. 9 (citations omitted), quoting *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

In order to ensure that litigants not be able to avoid the exclusive jurisdiction of the Adjustment and Public Law Boards by clever pleading, courts have declined to assume jurisdiction over claims of wrongful discharge, *Andrews,* or of intentional infliction of emotional distress arising out of a discharge, *see Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). They have also refused to consider claims arising out of non-termination disputes where the employee's rights arise solely out of the employment contract itself. *E.g., American Federation of Railroad Police (AFRP) v. National Railroad Passenger Corp. (Amtrak),* 832 F.2d 14, 17 (2d Cir.1987); *Evans v. Central of Georgia R. Co.,* 619 F.Supp. 1364, 1369 (N.D.Ga.1985). However, courts have refused to classify disputes outside these categories as minor, especially where the "limited" relief of backpay and reinstatement available through the Adjustment Boards is unsuitable as a remedy, *see Buell,* 107 S.Ct. at 1415–16 & n. 12, or where the claim is incidental to the employment relationship and to the interpretation of the employment agreement, *see Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 814, 816 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Buell v. Atchison, Topeka and Santa Fe Ry. Co.,* 771 F.2d 1320, 1323–24 (9th Cir.1985), *aff'd in pertinent part and modified on other grounds,* —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987).

■ Defendants contend that Merola's complaint concerns only a minor dispute which has already been resolved by the Public Law Board, and that this Court therefore lacks jurisdiction. However, Merola's claims do not arise out of his discharge itself. Rather, they address the entirely different question of whether he was unlawfully arrested, prosecuted and wiretapped, and the extent of the damages he suffered thereby.[2] Although it is con-

---

**2.** Paragraph 30 of the Complaint, explaining the damages Merola seeks, states:

> As a direct and proximate result of the acts and omissions of the defendants, as aforesaid,

the plaintiff was deprived of his liberty, suffered strain, anxiety and painful mental suffering, was subject to humiliation, was required to engage the services of an attorney to

ceivable that defendants will be able to introduce evidence that Merola's employment contract included provisions establishing the circumstances under which an employee might be arrested, prosecuted and wiretapped, so far they have not done so. Nor did the Public Law Board decision, which focused on whether Amtrak properly took disciplinary action against Merola, reach any determination on these questions, *see* Award at 14, or indeed even address them.

In *Brady v. Penn Central Transportation Co.*, 406 F.Supp. 1239 (S.D.N.Y.1975), Judge Levet addressed circumstances virtually identical to these. Two railroad employees brought state law claims of false arrest and malicious prosecution, growing out of an arrest for attempted burglary on company property.[3] The criminal charges were eventually dropped, but a disciplinary proceeding led to the employees' dismissal by the railroad. The National Mediation Board upheld the dismissal. Judge Levet found that the claim asserted was a different one from that addressed by the Board, and therefore that the plaintiffs were not estopped from litigating the question. 406 F.Supp. at 1242. *Brady* did not directly address whether the claim in that case involved only a "minor" dispute. However, Judge Levet's conclusion that it was separate from the employment dispute addressed by the Board clearly points to the analogous conclusion that the dispute in *Brady*, like the one presented here, did not raise the issues of contractual interpretation that Congress intended to leave to the adjudicative boards established by the RLA.

The two cases on which the defendants primarily rely do not compel a different result. In *Bradley v. Trans World Air-lines, Inc.*, No. 85 C 3941 (E.D.N.Y. June 2, 1986) [available on WESTLAW, 1986 WL 20690], Judge Nickerson considered an employee's common law claims of, *inter alia,* false arrest and false imprisonment. The claims arose out of a single incident in which the employee was strip searched at work—but not further disciplined—because he was suspected of drug possession. In finding that the propriety of the defendants' actions had to be judged under the terms of the collective bargaining agreement, slip op. at 3, Judge Nickerson cited *Strachan v. Union Oil Co.*, 768 F.2d 703 (5th Cir.1985), for the proposition that the plaintiff could have refused to consent to the search, "and then could have filed a grievance if disciplinary action followed his refusal to consent. The claims then could be validly adjudicated through appropriate grievance procedures." Slip op. at 4. Obviously, such a course, which would have resulted in the controversy being decided based upon an interpretation of the collective bargaining agreement, was not open to Merola in this case. The same course would have been available to the plaintiff in *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981), who brought state false imprisonment and defamation claims stemming from an on-the-job incident in which his superiors asked for the keys to his car and then searched it, turning up cans of soda that he was accused of stealing. Both of these decisions concerned disputes over employers' rights to search workers whom they suspected of having broken company rules. They involved questions basically contractual in nature, as did the state law claims in *Campbell v. Pan American World Airways, Inc.*, 668 F.Supp. 139 (E.D.N.Y.1987), a case not cited by defendants. Based on the record presently before me, I cannot say the same of the claims brought by Merola.

represent him, has lost and continues to lose sums of money which plaintiff otherwise would have earned; and, upon information and belief, will incur and sustain such loss in the future.

Merola may not recover in this action for any loss of earnings due to his suspension and dismissal by Amtrak, since that would amount to relitigation of the "minor" dispute concerning his discharge. However, the other damages he seeks—including any loss of earnings caused by the alleged false arrest and imprisonment, malicious prosecution, and wiretapping, but not stemming from the suspension and dismissal—are unrelated to the discharge.

**3.** The *Brady* plaintiffs also brought claims under the Federal Employers' Liability Act, which were dismissed on the ground that malicious prosecution and false arrest are not actionable under the F.E.L.A. 406 F.Supp. at 1241.

### B. § 1983 and "State Action"

Defendants argue that even if the court has jurisdiction over this action, the § 1983 claims asserted by Merola fail to state a claim under Rule 12(b)(6), because insufficient "state action" is alleged to make out a violation of Merola's constitutional rights under the Fourteenth Amendment. This motion will not be considered as one for summary judgment, because I have not considered any factual matter outside the complaint in addressing this issue. Furthermore, defendants have stated that they are relying only on Merola's allegations for the purpose of this motion. Defendants' Moving Memorandum of Law at 5 n. *.

On a motion to dismiss for failure to state a claim, the allegations in the complaint must be construed in favor of the plaintiff, *see Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), and the complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' " *id.*, quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

To state a claim under § 1983 for violation of a constitutional right guaranteed by the Fourteenth Amendment, a plaintiff must allege sufficient "state action" to make out a constitutional violation. If he does so, he will have satisfactorily alleged the statutory requirement that defendants have acted "under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 & n. 18, 102 S.Ct. 2744, 2752–53 & n. 18, 73 L.Ed.2d 482 (1982).[4] Defendants contend that they are all private parties, and that therefore Merola must satisfy the two-prong test for "state action" articulated in *Lugar*:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

457 U.S. at 937, 102 S.Ct. at 2753–54; *Albert v. Carovano*, 824 F.2d 1333, 1339 (2d Cir.1987). The two prongs of the test, however, "collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754; *Dahlberg v. Becker*, 748 F.2d at 89 n. 3.

The three individual defendants in this action are Amtrak railroad police, who must be employed pursuant to 45 U.S.C. § 545(j). Section 545(j) provides in relevant part:

Railroad police employed by [Amtrak] who have complied with the provisions of any State law setting forth licensing, residency, or related requirements applicable to railroad police ... may be employed without regard to the provisions of any other State's laws setting forth such requirements.

In his memoranda of law, Merola points to § 88 of the New York Railroad Law, and contends that he will be able to prove that some or all of the Amtrak police defendants complied with its requirements. Section 88(1) provides in relevant part:

Upon the application of any corporation owning or operating a railroad, ... the superintendent of state police may appoint any person as a policeman, with all the powers of a policeman in cities and villages, for the preservation of order

---

**4.** In view of my disposition of this motion, I need not address the question whether the complaint states a violation of any federal statute, *see Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), in which case only the "under color of state law" requirement need be met. *See Lugar*, 457 U.S. at 935 n. 18, 102 S.Ct. at 2752–53 n. 18. Nor need I consider whether, as to any of the defendants, the complaint states a claim by adequately alleging joint action with a state official. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).

 

and of the public peace, and the arrest of all persons committing offenses upon the land of or upon property in the custody of or under the control of such corporation. . . .

Section 88(9) requires that, before such a person begins working as a police officer, he take and subscribe the constitutional oath of office, which must be filed with the New York Secretary of State.

■ If Merola can prove that any of the Amtrak police officer defendants were appointed under this statute, or under an analogous law of any other state, he will be able to establish that that defendant is a state official subject to liability under § 1983. *See Rojas v. Alexander's Dept. Store, Inc.,* 654 F.Supp. 856 (E.D.N.Y.1986) (store detective appointed a special patrolman by New York City Police Commissioner and given power to arrest is subject to § 1983 liability); *Thompson v. McCoy,* 425 F.Supp. 407 (D.S.C.1976) (same as to security guard granted authority by state under similar statutory scheme to make arrests on employer's premises); *see also Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951) (detective given oath and qualified as special police officer by City of Miami is subject to prosecution under predecessor of 18 U.S.C. § 242, criminal counterpart to § 1983). *Cf. Dempsey v. New York Central and Hudson River Railroad Co.,* 146 N.Y. 290, 40 N.E. 867 (1895) (railroad policeman appointed pursuant to predecessor of § 88 is "public officer" for purposes of provision of New York Constitution prohibiting public officer from receiving free pass from any corporation). Thus, as to the Amtrak police defendants, the complaint may not be dismissed on its face for lack of "state action."

■ Nor may the complaint be dismissed on its face as to Amtrak on this "state action" ground. Under § 88, the law enforcement authority of the state is granted to railroad police only through the efforts and for the benefit of their employer, whose decision to employ them involves a utilization for its benefit of state law enforcement authority sufficient to satisfy the "state action" requirement of § 1983. *See Rojas,* 654 F.Supp. at 858; *Thompson,* 425 F.Supp. at 410.

## CONCLUSION

Defendants' motion to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to allege sufficient "state action" to state a claim under Rule 12(b)(6) is denied. I express no view as to the sufficiency of the complaint in any other respect. The fourth count of Merola's complaint has been withdrawn and is dismissed. Plaintiff is directed promptly to seek discovery on the question of whether each of the individual defendants was given any official powers by any state.

SO ORDERED.