**Ronald A. CHILES and Patrick R. Hollis, Plaintiffs,**

**v.**

**Louis CROOKS, Individually and in his Capacity as a Wells Fargo Security Officer; and Security Group, Inc., d/b/a Wells Fargo Guard Services, Defendants.**

Civ. A. No. 3:88–1586–15.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 1, 1989.

Cameron M. Currie, Columbia, S.C., for plaintiffs.

George C. Beighley, Leslie A. Cotter, Jr., Richardson, Plowden, Grier & Howser, Columbia, S.C., for defendants.

HAMILTON, District Judge.

Plaintiffs, Ronald A. Chiles and Patrick R. Hollis, instituted this action under 42 U.S.C. §§ 1981 and 1983 alleging that defendant Louis Crooks deprived them of their federal constitutional and statutory rights. Plaintiffs' complaint also raises the pendent state law claims of malicious prosecution and intentional infliction of emotional distress against Crooks and Crooks' employer, Security Group, Inc., d/b/a Wells Fargo Guard Services (hereinafter "Security Group"). Defendant Crooks has moved to dismiss the federal claims for lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ.Proc., and for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.Proc. Both defendants have moved to dismiss the pendent state law claims for resolution in state court. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988).

## BACKGROUND FACTS

On November 5, 1987, plaintiffs drove to Colonial Life and Accident Insurance Company's Columbia office, where Chiles' wife was employed. Plaintiffs allege that they entered the parking lot so that Chiles could pick up his wife's car. According to plaintiffs, Mrs. Chiles' car was not in its assigned spot so they left the lot without getting out of Hollis' car.

When plaintiffs left the parking lot, Crooks, then working as a security guard at Colonial Life and employed by Security Group, followed them and recorded their license plate number. Crooks then returned to Colonial Life and reported a suspected criminal act to the Columbia Police Department. Crooks told the police that, while in Colonial Life's parking lot, Chiles had gotten out of Hollis' car and had tampered with a car belonging to another Colonial Life employee. Crooks also called the victim and informed her that her car had been tampered with.

As a result of Crooks' alleged false report, Chiles was arrested for auto tampering under S.C.Code Ann. § 16–21–90 (Law. Co-op.1985). Hollis was later interviewed by Columbia police regarding the incident. After Hollis told the interviewing officer that neither he nor Chiles got out of his car in the Colonial Life parking lot, Hollis was arrested and charged with giving false information to a police officer under S.C.Ann. § 16–17–725 (Law.Co-op.Supp.1988). The charges against both plaintiffs were dropped after they agreed to sign covenants not to sue the City of Columbia or its employees.

Plaintiffs' first cause of action seeks damages under 42 U.S.C. § 1983 against Crooks for allegedly causing the Columbia City Police Department to arrest them illegally, in violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs' second cause of action against Crooks is for a denial of equal rights under 42 U.S.C. § 1981 for allegedly accusing plaintiff Chiles of committing a crime simply because he is black. Plaintiffs' third cause of action for malicious prosecution and their fourth cause of action for intentional affliction of emotional distress are pendent state claims which apply to both defendants. Defendants have moved to dismiss all claims.

## ANALYSIS

■ Crooks has moved to dismiss plaintiffs' federal claims for lack of subject mat-

ter jurisdiction, Rule 12(b)(1), Fed.R.Civ. Proc., and for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.Proc. Where, as here, a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to determine the merits of the claim pursuant to Rule 12(b)(6) or Rule 56. *See Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir.1988); *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1346–47 (5th Cir.1985); *see generally* 2 J. Moore, W. Taggart 7 J. Wicker, *Moore's Federal Practice* ¶ 12.07 [2.–1] at 12–50 (1982).

In ruling on defendants' 12(b)(6) motion, this court must follow the accepted rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The complaint must be construed liberally and all doubts must be resolved in favor of the nonmoving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Even after accepting plaintiffs' allegations as true, their complaint fails to state a federal cause of action. Consequently, the court must dismiss plaintiffs' federal claims under Rule 12(b)(6), Fed.R.Civ.Proc. The court dismisses without prejudice plaintiffs' pendent state law claims for res-olution in state court. *Cohill*, 108 S.Ct. at 618–19.

## SECTION 1983 CLAIM

In order to state a claim under 42 U.S.C. § 1983,[1] plaintiffs must show: (1) that Crooks caused them to be deprived of a right secured by the Constitution or laws of the United States; and (2) that in doing so he acted under color of state law. Where, as here, plaintiffs attempt to state a claim under § 1983 for violation of constitutional rights guaranteed them by the Fourteenth Amendment, they must show sufficient "state action" to make out a constitutional violation.[2]

█ The Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) announced a two-part test for determining the existence of state action:

> *First*, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible ... *Second*, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

457 U.S. at 937, 102 S.Ct. at 2753 (emphasis added). The first prong is satisfied here because officers of the Columbia police force—"person[s] for whom the state is responsible"—made the alleged unconstitutional arrests. *Cruz v. Donnelly*, 727 F.2d 79, 81 (3rd Cir.1984). But plaintiffs cannot satisfy the second prong of the *Lugar* test because they failed to allege sufficient

---

1. 42 U.S.C. § 1983 provides, in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

2. The Fourteenth Amendment of the United States Constitution provides, in relevant part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14. Because the Fourteenth Amendment is directed at the states, it can be violated only by conduct that may be characterized fairly as "state action." *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982).

facts to show that Crooks, the party they have charged in this lawsuit with their constitutional deprivations, "may fairly be said to be a state actor." *Id.* at 81–82.

Courts have set forth a number of tests for determining when the circumstances of a case convert a private individual into a state actor. *See, e.g., Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ("public function" test); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350–51, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) ("nexus" test); *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2755; *Daniel v. Ferguson,* 839 F.2d 1124, 1130–31 (5th Cir.1988) ("joint action" test). In this case, plaintiffs, proceeding under the "joint action" test, contend that Crooks is a state actor because "he was a willful participant in joint action with officers of the Columbia Police Department, agents of the State of South Carolina." Complaint at ¶ 8; *see also* plaintiffs' brief at 7–8. Notably, if plaintiffs could prove that Crooks willfully participated in a joint action with police, they would not only meet the Fourteenth Amendment's state-action requirement, but the "under color of state law" requirement of § 1983 as well. 457 U.S. at 931, 102 S.Ct. at 2750; *see also Daniel,* 839 F.2d at 1130–31. Plaintiffs' complaint, however, is devoid of any factual allegations from which a jury could reasonably infer that Crooks acted jointly with officers of the Columbia Police Department.

Plaintiff's allegations, if proven, would only establish that Crooks recorded Hollis' license plate number, alerted the victim that Chiles had tampered with her car, reported the crime to the police, and gave a written statement, upon which the police took action. Complaint at ¶¶ 9–13. As the authorities discussed below make clear, plaintiffs' failure to allege a conspiracy, a prearranged plan, or a meeting of the minds between Crooks and the police is fatal to their "joint action" theory.

The Court in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) found that state agents and Kress employees acted jointly because their conduct constituted a *conspiracy* or *meeting of the minds.* Likewise, the Court in *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) found joint action because the government agent and the private party laying in wait for the victims carried out a *previously agreed upon plan. See also Dennis v. Sparks,* 449 U.S. 24, 30, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980) (private parties who corruptly *conspired* with the judge were acting under color of law within the meaning of § 1983). But in cases, such as this, where a plaintiff relies upon the "joint action" theory without alleging a conspiracy, a prearranged plan, or a meeting of the minds, courts have dismissed at the pretrial stage those claim(s) requiring state action. *See, e.g., Daniel,* 839 F.2d at 1130–31 (plaintiff's allegation that private defendants willfully participated in joint action with a state official properly dismissed on 12(b)(6) motion because record lacked evidence of conspiracy between private defendants and state actor); *Dahlberg v. Becker,* 748 F.2d 85, 93 (2nd Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (complaint properly dismissed on 12(b)(6) motion where no claim was made that the state judges actually entered into a conspiracy or had a meeting of the minds, as in *Price* and *Adickes,* with the attorney defendants to deprive plaintiff of his liberty.); *Cruz v. Donnelly,* 727 F.2d 79 (3rd Cir.1984) (where complaint failed to allege the existence of a prearranged plan by which the police substituted the judgment of private parties for their own official authority, private store owner cannot be said to have engaged in concerted or joint action with police).

█ Contrary to their contentions, plaintiffs cannot establish joint action here simply by proving their allegation that Columbia police officers based their decision to arrest Chiles on Crooks' accusations alone. It is well-settled that "police reliance in

making an arrest on the information given by the private party does not make the private party a state actor." *Daniel,* 839 F.2d at 130; *see also Lugar,* 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21 ("We do not hold today that 'a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of state law.' "); *Sims v. Jefferson Downs Racing Association,* 778 F.2d 1068, 1078–79 (5th Cir.1985) ("The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make the party's acts state action."); *Benavidez v. Gunnell,* 722 F.2d 615 (10th Cir.1983) (held that the mere furnishing of information to police officers who take action thereon does not constitute joint action); *Tarkowski v. Robert Barlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir. 1980) ("A private person does not conspire with a state official merely by invoking an exercise of the state's official authority.").

In sum, the court concludes that even if plaintiffs proved every factual allegation contained in their complaint, they would not establish joint action so as to satisfy the Fourteenth Amendment's state-action requirement or § 1983's "color of state law" requirement.

■ Plaintiffs next contend that Crooks acted under the color of state law in this case because: (1) he was licensed under the South Carolina Private Detective and Private Security Agencies Act, S.C.Code Ann. § 40–17–10 *et seq.* (Law.Co-op.1986 & Supp. 1988) (hereinafter "the Act"); and (2) he investigated and reported criminal behavior while on the job. The Act sets forth a statutory scheme for the licensing of security guards and grants them the power to arrest and detain persons on the premises they have been hired to protect. S.C.Code Ann. § 40–17–130 (Law.Co-op.1986). If Crooks had arrested plaintiff on Colonial Life's premises in exercise of rights granted him under § 40–17–130 of the Act, he clearly would have been acting under the color of state law. *See, e.g., Thompson v. McCoy,* 425 F.Supp. 407 (D.S.C.1976) (security guard found to have acted under color of state law when he allegedly arrested and assaulted the plaintiff on premises he was hired to protect); *see also State v. Brant,* 278 S.C. 188, 293 S.E.2d 703 (1982) ("According to this provision [§ 40–17–130], a security guard licensed by SLED stands in the shoes of the sheriff *for purposes of arrest* while he is on the property is is hired to protect." (emphasis added)). But in this case, Crooks never arrested plaintiffs, nor did he act pursuant to any other authority that might have been granted to him by the Act.

Based upon plaintiffs' allegations, Crooks merely investigated and reported alleged criminal behavior. In so doing, he was not acting pursuant to any provision of the Act. According to a South Carolina Attorney General Opinion issued on February 7, 1980, the Act does not authorize security guards to conduct criminal investigations. In this particular opinion, the Attorney General concluded that:

[Section 40–17–130] ... merely empowers the private security guard to effect an arrest as a public law enforcement official might. It empowers him to do no more. The South Carolina Detective and Private Security Agency Act does not raise the private security guard to the level of that of a public law enforcement official ... The legislation [the Private Security Act] does not provide for any investigatory authority on the part of security guards; and there is no apparent intention to give security guards these powers. The ostensible purpose of the Act was to provide security guards with the powers of arrest and assistance to local law enforcement who are charged with the responsibility of conducting criminal investigations. *See* R 73–40(60). Therefore, it can be said that private security guards are neither educated in the techniques of criminal investigation nor are they authorized by statute to conduct any such investigations,

and therefore must defer to the appropriate law enforcement agency. 1980 Op.Att'y Gen., No. 80–20, p. 47. Therefore, the court must conclude that Crooks did not act under color of state law simply because: (1) he was licensed under the Act; and (2) he investigated and reported criminal behavior while on the job.[3]

## SECTION 1981 CLAIM

In their second cause of action, plaintiffs allege that Crooks is liable to them under 42 U.S.C. § 1981[4] for denying them "the full and equal benefit of all laws and proceedings for the security of persons ... as is enjoyed by white citizens; particularly the rights assured them under the Fourth, Fifth, and Fourteenth amendments to the United States Constitution...." Complaint at ¶ 20. This claim is wholly without merit and must be dismissed for several reasons.

First, plaintiffs § 1981 claim must be dismissed for lack of state action. The Fourth Circuit has made it clear that, although private discrimination is actionable where a defendant implicates the "right ... to make and explore contracts" clause of § 1981, state action is required in order to state a claim under the "full and equal benefit of all laws" provision. *Shaare Tefila Congregation v. Cobb,* 785 F.2d 523, 525–526 (4th Cir.1986), *rev'd on other grounds,* 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). Quoting with approval the Third Circuit's decision in *Mahone v. Waddle,* 564 F.2d 1018 (3rd Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), the Fourth Circuit stated:

> The words 'full and equal benefit of all *laws and proceedings* for the security of persons and property' (emphasis supplied) ... suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause.

785 F.2d at 526 (quoting *Mahone,* 654 F.2d at 1029). As explained above, plaintiffs cannot establish state action under the two-prong test espoused in *Lugar.* Thus, plaintiffs' § 1981 claim, which rests on the "equal benefits" clause of the statute, must be dismissed for lack of an essential element. Rule 12(b)(6), Fed.R.Civ.Proc.

■ Plaintiffs cause of action under § 1981 must also be dismissed because the complaint is devoid of *any* factual allegation which would support a jury finding that Crooks' actions towards plaintiffs were racially motivated.

---

**3.** To be distinguished are those cases finding action under color of law in which security guards or off-duty police officers acted, or purported to act, pursuant to some authority granted to them by the state. *See, e.g., Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir.1984) (off-duty police officer working as security guard found to have acted under color of law in *arresting* plaintiff; court noted that defendant acted as an on-duty officer, *e.g.,* flashing his badge), *vacated on other grounds,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir.1980) (action under color of law found where bank guard responded to problem as police officer by identifying himself as such, showing police identification, and pulling his gun); *Davis v. Murphy,* 559 F.2d 1098, 1101 (7th Cir.1977) (action under color of law when Milwaukee statute provided that police officers were always subject to duty; officers in question identified themselves as police and showed their badges and guns during brawl they started); *Thompson v. McCoy,* 425 F.Supp. 407 (D.S.C.1976) (discussed above).

**4.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

It is settled law that in order for plaintiffs to state a claim under § 1981, they must allege some fact or facts that would support at least a reasonable inference that Crooks discriminated against them *because of their race. See, e.g., German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich.1980); *Pearlswig v. Randolph,* 497 F.Supp. 569, 570 (D.Mass.1980); *Bell v. Brennan,* 570 F.Supp. 1116 (E.D.Pa.1983). After considering the allegations of plaintiffs' complaint liberally, as required by Rule 8(f), Fed.R.Civ.Proc., it is clear that they have not stated a claim under § 1981. The complaint fails to allege a single fact that could support plaintiffs' allegation that Chiles' actions were motivated by plaintiffs' race. Consequently, this claim must be dismissed. Rule 12(b)(6), Fed.R.Civ.Proc.

In addition to the reasons given above for why both plaintiffs' federal claims should be dismissed, this court is constrained to conclude that Hollis' federal claims should also be dismissed for lack of proximate cause. *Arnold v. International Business Machines,* 637 F.2d 1350, 1354–55 (9th Cir.1981) (holding that "failure to demonstrate a causal connection is fatal to a § 1983 ... cause of action"). As the Ninth Circuit in *Arnold* noted, plaintiffs do not satisfy the causal requirement of·§ 1983 by merely showing cause and fact. *Id.* at 1355 (citing W. Prosser, *Law of Torts* § 41 at 238–39 (4th Cir. ed. 1971)). Rather, plaintiffs must establish legal or proximate cause. 637 F.2d at 1355; *see also Kiny v. Massarweh,* 782 F.2d 825, 828–29 (9th Cir. 1986). The requisite causal connection can either be established by some kind of direct personal participation in the deprivation, or by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. 637 F.2d at 1355.

While this court is prepared to concede that if, as alleged, Crooks falsely accused Chiles of auto tampering and did so because he is black, that he reasonably should have known that this could cause others to inflict injury on Chiles. This court, however, simply cannot see how the Columbia Police Department's act of charging Hollis with giving a false statement to police was a foreseeable consequence of Crooks' alleged actions. Consequently, the court must dismiss Hollis' federal claims on the additional ground of lack of proximate cause.

## PENDENT STATE CLAIMS

According to the Supreme Court in *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* 108 S.Ct. at 619 n. 7; *see also Sigmon v. Poe,* 564 F.2d 1093, 1097 (4th Cir.1977); *Cribb v. Pelham,* 552 F.Supp. 1217, 1220 (D.S.C.1982). After considering the factors listed in *Cohill,* this court declines to exercise pendent jurisdiction over plaintiffs' state law claims. Accordingly, plaintiffs' claims of malicious prosecution and intentional infliction of emotional distress are dismissed without prejudice for disposition in state court.

## CONCLUSION

Based upon the foregoing reasoning and cited authorities, this court grants Crooks' motion to dismiss plaintiffs' causes of action under 42 U.S.C. §§ 1981 and 1983 for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ. Proc. The court dismisses plaintiffs' pendent state claims of malicious prosecution and intentional infliction of emotional distress without prejudice for disposition in state court.

IT IS SO ORDERED.