**Andy W. McBEATH, Appellant,**

v.

**INTER–AMERICAN CITIZENS FOR DECENCY COMMITTEE et al., Appellees.**

**No. 23372.**

United States Court of Appeals
Fifth Circuit.

March 13, 1967.

Rehearing Denied April 20, 1967.

**360**

E. Eugene Palmer and Osorio & Palmer, Austin, Tex., for appellant.

Jeremiah Ingels Rhodes, Eagle Pass, Tex., for appellees.

Before TUTTLE, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

This private civil antitrust action alleges a violation of the Sherman Act, 15 U.S.C. § 1, by defendants, acting in concert with one another to restrain interstate and foreign trade unlawfully, which actions are said to have injured and continue to injure plaintiff-appellant McBeath. Jurisdiction is invoked under 28 U.S.C. § 1337 which confers jurisdiction on district courts of any civil action arising under any Act of Congress protecting trade and commerce against restraints, and under the Clayton Act, 15 U.S.C. § 15, which also authorizes such a suit and provides for treble damages sustained by reason of injury resulting from violations of antitrust laws. McBeath seeks injunctive relief as provided by 15 U.S.C. § 26, and treble damages as provided by 15 U.S.C. § 15. Defendants moved to dismiss for lack of jurisdiction, and after a hearing on the motion, the district court, without assigning reasons, ordered the suit dismissed. We reverse and remand.

McBeath is the owner, editor and publisher of a weekly newspaper, the Eagle Pass News Guide, published in Eagle Pass, Texas, and circulated principally in Eagle Pass and Piedras Negras, Coahuila, Mexico. Eagle Pass and Piedras Negras are separated by the international boundary line of the United States and Mexico. The complaint alleges that the individual defendants have organized the defendant organization "Inter-American Citizens for Decency Committee" and that the organization and the individual defendants have conspired and are conspiring to exert pressures upon persons who advertise with plaintiff; that such pressure is in the nature of an organized boycott against plaintiff's advertisers designed to intimidate, coerce and prevent them from doing business with him; that as a result of the boycott, lawful foreign trade has been restrained, plaintiff has been damaged in the present sum of $3,-000, and destruction of his business is threatened. McBeath alleges that the coercive campaign is being carried on by the publication of inflammatory statements in two newspapers published in Piedras Negras, by messages broadcast daily over KEPS Radio Station in Eagle Pass, of which one defendant, Wheeler,

is an employee, and by handbills and circulars. It is also alleged that KEPS Radio Station and the two newspapers published in Piedras Negras are in competition with him with respect to advertising purchased by various businesses in the two communities.

Interrogatories were propounded to the four individual defendants, the answers to which show the following: Three of the defendants, Wheeler, Mijarez and Miguel, are officers of the Inter-American Citizens for Decency (sued here, however, as "Inter-American Citizens for Decency *Committee*"); Hume, the remaining individual defendant, was employed by the organization to represent it as counsel. The organization was formed on August 4, 1965. Hume feared that the criticism of McBeath and various statements might be construed as a boycott and warned the President of the organization, Wheeler, and others against the use of such statements. Statements were in fact issued to the press on behalf of the organization, the nature of which is not of record. The organization also purchased radio time for announcements on Radio Station KEPS. The record also fails to disclose the nature of the announcements.

At the hearing on October 27, 1965 of the motion to dismiss, proof was made that the Eagle Pass News Guide is operating in interstate and foreign commerce. Out of a total of 2,100 newspapers, approximately 200 are sold out of state, 26 or 27 of which are mailed to foreign countries. National as well as local advertising is published. The allegations that McBeath has suffered pecuniary loss were corroborated at the hearing. Losses in advertising occurred. McBeath formerly printed a maximum of 50 inches of Mexican advertising weekly. In June 1965 this advertising dwindled to approximately 12 inches, and in July to 8 inches. At the time of the hearing he had only one 2-inch Mexican advertisement. Advertising sells for a maximum of 84 cents an inch.

The question which we are called upon to decide is the correctness of the district court's ruling in dismissing the suit for lack of jurisdiction without hearing the merits of the case, where allegations of a violation of the Sherman Act and resultant damages have been made but no proof has been offered as to the alleged violation and the causal connection between the violation and the damages sustained.

■ For an aggrieved party to state a claim for relief under the Sherman Act it is necessary to allege only a per se violation of the Act. In a treble damage action, allegations of a per se violation plus resultant damages must be made. In Radiant Burners, Inc. v. Peoples Gas Lgt. & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961), in reversing the Seventh Circuit which had affirmed the district court's dismissal of a suit alleging a conspiracy designed to exclude the sale of plaintiff's gas heaters from the public market, the Supreme Court held that by Section 1 of the Sherman Act "* * * Congress has made illegal: 'Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States * * *.' Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 515, 55 L.Ed. 619. Congress having thus prescribed the criteria of the prohibitions, the courts may not expand them. *Therefore, to state a claim upon which relief can be granted under that section, allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires."* (Emphasis supplied.) The complaint of McBeath clearly meets the test applied in *Radiant Burners, Inc.* He has alleged a conspiracy in the form of a boycott in restraint of trade and the substance of these allegations indicates a secondary boycott. He has also alleged damages resulting from the unlawful acts. It is well established that conspiracies and boycotts are proscribed activities under Section 1 of the Sherman Act. In Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), the Supreme Court, in reversing

the Ninth Circuit which had affirmed the district court's dismissal by summary judgment of a complaint alleging a boycott, said (359 U.S. 212, 79 S.Ct. 709) that "Group boycotts * * * have long been held to be in the forbidden category," citing as authority Eastern State Retail Lumber Dealers' Ass'n v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L. Ed. 1490; Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Fashion Originators' Guild v. Federal Trade Commission, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 214, 71 S.Ct. 259, 261, 95 L.Ed. 219; Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 625, 73 S. Ct. 872, 889, 97 L.Ed. 1277; Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545. Secondary boycotts are also prohibited by Section 1 of the Sherman Act. See Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921).

Needless to say, the proscribed violation and the resultant damages must be proved for the aggrieved party to prevail. It was understood both by the lower court and the parties that the hearing on the motion was to determine the jurisdictional issues alone. The record shows that counsel for McBeath was prepared to offer evidence on the merits of the case at the conclusion of the jurisdictional issues. Following the final arguments of counsel on the jurisdictional question the court summarily dismissed the suit and later entered an order without assigning reasons for his finding that the court lacked jurisdiction. Proof was made at the hearing that the Eagle Pass News Guide operated in interstate and foreign commerce; that the foreign commerce of the business had been affected; and that McBeath had suffered pecuniary losses during the period in which the alleged violations occurred.

Defendants' principal contention is that without proof that the conduct complained of directly and substantially affects the interstate commerce of Mc-

Beath's business, the court lacks jurisdiction over the matter. Defendants rely principally on Page v. Work, 9 Cir., 1961, 290 F.2d 323, cert. den. 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961), in which the Court of Appeals upheld a judgment dismissing a civil antitrust action for treble damages for want of jurisdiction and held that "The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business." The *Page* case is readily distinguishable from the instant one. In a hearing on the jurisdictional issue the court found from the evidence that defendant's newspaper was primarily engaged in the publication of legal advertising; that this was a purely local activity directed to a local intrastate market, relating to a product (legal advertisement) not in the flow of interstate commerce; and accordingly that the court lacked jurisdiction. The product involved in the instant case, the publication of news as well as advertising secured from both Texas and Mexico, is not directed solely to a local intrastate market. It is further noted that in *Page,* supra, there were "extensive pretrial discovery proceedings and conferences, culminating in a pretrial conference order containing 30 pages of admitted facts." In order to determine the issue of jurisdiction the court in *Page* fully considered the merits of the case, which it necessarily was obliged to do in a matter of this kind. There was, therefore, an abundance of evidence before the court. Here, though there was oral testimony it was not sufficiently complete for the court to make a proper determination of the jurisdictional question. In our view it was necessary for the court to consider more extensively the merits of the controversy, particularly in connection with the alleged violations of the antitrust laws, in order to make a proper determination of jurisdiction.

■ Undoubtedly, under Rule 12(d) of the Federal Rules of Civil Procedure a court may determine the prerequisites to

jurisdiction in advance of a trial on the merits. However, where the factual and jurisdictional issues are completely intermeshed the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other. In Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), the Supreme Court recognized that there were types of cases "where the question of jurisdiction is dependent on decision of the merits." In Schramm v. Oakes, 10 Cir., 1965, 352 F.2d 143, the court held that "where the issue of jurisdiction is dependent upon a decision on the merits * * * the trial court should determine jurisdiction by proceeding to a decision on the merits." The Sixth Circuit in Fireman's Fund Ins. Co. v. Railway Express Agency, 1958, 253 F.2d 780, 784, said, "Where the jurisdictional issue * * * can not be decided without the ruling constituting at the same time a ruling on the merits of the case, the case should be heard and determined on its merits through regular trial procedure." While the three cited cases involved a question of jurisdiction not pertinent here, we feel as the Tenth Circuit did in *Schramm* that "the principles to be applied in each instance are substantially similar."

■ The question of jurisdiction here, including the existence of a conspiracy and a boycott or secondary boycott and their significant effect on interstate commerce, is so inextricably connected with the merits of the case itself that it was error for the court to determine that it lacked jurisdiction, thereby dismissing the suit, without according McBeath a full opportunity to prove his case on the merits, particularly considering the incomplete record and the paucity of evidence before the court.

The allegations of the complaint expressly allege a violation of the Sherman Act in the form of a boycott and the substance of the complaint alleges a secondary boycott. The complaint further alleges that the acts complained of affected and are affecting the interstate commerce of the business and have caused McBeath to sustain losses. Answers to the interrogatories propounded to defendant Hume show that every time a statement was issued by the defendant President of the organization and others, he considered it necessary to warn them repeatedly against making statements that could be construed as constituting a boycott. McBeath should have been allowed to develop this evidence in a full hearing on the merits where the issue of jurisdiction and the merits are so closely tied together and inseparable. It was error for the court summarily to preclude him from so doing.

Reversed and remanded.