**Lewis R. DANIEL, Plaintiff-Appellant,**

v.

**Wayne FERGUSON, et al.,
Defendants-Appellees.**

No. 86-2998.

United States Court of Appeals,
Fifth Circuit.

March 17, 1988.

Frank P. Hernandez, Dallas, Tex., for plaintiff-appellant.

Robert T. Mowrey, David M. Pyke, Dallas, Tex., for Ferguson, et al.

Bob Lemens, Asst. Atty. Gen., Jerry Benedict, Jim Mattox, Atty. Gen., Austin, Tex., for Thompson, Weaver, Hagan.

Before GOLDBERG, POLITZ and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

The plaintiff in this civil rights action under 42 U.S.C. § 1983 seeks to recover for deprivation of property rights without due process of law and for arrest without probable cause. After hearing the plaintiff's evidence the district court dismissed the case under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Although we find that the district court had jurisdiction we affirm the disposition of plaintiff's § 1983 claims under Fed.R.Civ.P. 50(a), holding that the plaintiff failed to demonstrate (1) that he was deprived of any property rights and (2) that the violation, if any, of his rights in connection with his arrest resulted from state action. Plaintiff also sought recovery under state law. The district court, finding that it did not have subject matter jurisdiction, did not reach the merits of these state law claims. We remand plaintiff's pendent state claims to the district court for exercise of its discretion as to the appropriate disposition.

## I. FACTS AND COURSE OF PROCEEDINGS

### A. Facts

On March 23, 1982, Plaintiff, Lewis R. Daniel, borrowed $687,000 from Lomas & Nettleton Financial Corporation ("the Lender").[1] Plaintiff gave the Lender a security interest in his farm land in Delta County, Texas ("the Farm"). On July 5, 1983, many months after Plaintiff had defaulted in his loan payments, the Lender foreclosed on the Farm. Even after the foreclosure, however, Plaintiff remained on the Farm. Plaintiff was a rent free tenant at will. In two letters, dated December 3, 1983 and February 14, 1984, the Lender gave Plaintiff formal notice of termination of his tenant at will status. Plaintiff testified that he nevertheless stayed on the Farm until late February or early March and returned to the Farm in early April, on at least one of the following days: April 9, 11, 12 or 13. Plaintiff also testified that he put chains and a lock on the Farm's gate around April 9.

On April 9, 1984, Plaintiff filed this action and a state court action challenging the Lender's foreclosure procedures and the Lender's title to the Farm.

---

1. Plaintiff Daniel never named the Lender as a defendant in this case.

On April 24, 1984, four relevant events occurred.

First, in the 162nd District Court of Delta County, Texas, defendant Judge Jim N. Thompson granted the Lender's request for a temporary restraining order to prevent Plaintiff from entering the Farm.

Second, an employee of the Lender, defendant Jim Judge, swore out a criminal trespass complaint against Plaintiff. The complaint alleged that "on or about the 10th day of April, 1984" Plaintiff "did then and there, intentionally and knowingly, remain on property, without the effective consent of L & N Land Corporation, the owner thereof, and the said defendant had received notice to depart but failed to do so." At the trial in this case, however, defendant Jim Judge testified that he did not actually see Plaintiff on the property on April 10, 1984. Defendant Jim Judge also testified "What I had knowledge of was his car on the property and sightings by individuals. That's where my statement came from."

Third, on the basis of defendant Jim Judge's complaint, Delta County Justice of the Peace W.T. Alley, a defendant, issued an arrest warrant for Plaintiff.

Fourth, D.P.S. Officers Hagen and Weaver, both named as defendants, attempted to serve this arrest warrant on Plaintiff at the Farm. Daniel testified that he observed the Lender's employees, defendants Jim Judge and Kent Krause, on the Farm at the same time as these two D.P.S. officers. Daniel testified that he was observing from a distance, and that he did not know why the officers were on the Farm and could not hear what they said. At the trial defendant Jim Judge testified that the Lender's employees and the D.P.S. officers were present on the Farm at the same time by coincidence.

The next day, April 25, 1984, Delta County Sheriff Michael Holbert and Delta County Deputy Sheriff Joe Zihlman, both named as defendants, served the arrest warrant.

On May 4, 1984, after a hearing attended by Plaintiff in the 162nd District Court of Delta County, Texas, defendant Judge Jim N. Thompson finalized the temporary restraining order by entering a temporary injunction ordering Daniel to stay off the Farm.

In this case Plaintiff named the six individual government employees identified above and ten private, nongovernmental defendants. In addition to the private defendants identified above, Plaintiff sued: Charlie Cullipher, the Lender's lessee; Jim Alsup and Randy Henderson, Cullipher's employees; Wayne Ferguson and Bruce French, the Lender's employees; and Charles Stegall, the purchaser of some of the personal property Daniel left on the Farm. The district court dismissed two additional defendants, the Lender's attorneys Julie McCoy and Robert Mowrey, before trial.

### B. Immunity

Before trial, the federal district court granted Judge Thompson's and Justice of the Peace Alley's motions for summary judgment based on absolute judicial immunity. The court found that these two defendants performed the acts that Plaintiff complained of in their capacity as judicial officers.[2] The Plaintiff also sued four other state actors, Delta County Sheriff Michael Holbert, Delta County Deputy Sheriff Joe Zihlman, and D.P.S. Officers Jerry Hagen and James Weaver. Before trial, the district court granted these four state actor defendants summary judgment on the basis of qualified immunity.[3] On ap-

2. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734–35, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980) (§ 1983 did not abolish common law immunity of judicial officers for acts within their judicial role); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (same).

3. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quali-

fied immunity is available for official acts so long as official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). In *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985), the Fifth Circuit imposed strict pleading requirements on plaintiffs whose complaint against a state official raises likely issues of immunity. The district court found that Daniel

peal, Plaintiff does not complain about the district court's disposition of the immunity motions. As a result we consider only the district court's dismissal of Plaintiff's claims against the private defendants.

### C. Trial

The district court impaneled a jury and tried the case against the private defendants on the basis of the pretrial order[4] which included the § 1983 claims and state law claims involving the legality of the Lender's foreclosure, defenses to the Lender's note, and trespass. At the conclusion of Plaintiff's case the district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction under Fed.R. Civ.P. 12(b)(1). The district court concluded that it had no subject matter jurisdiction because Plaintiff failed to prove a claim under § 1983.

### II. JURISDICTION

■ The district court cited *McBeath v. Inter–American Citizens for Decency Committee,* 374 F.2d 359 (5th Cir.), *cert. denied,* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed. 2d 214 (1967), to support its dismissal of Daniel's case under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In *McBeath* this court held that the trial court erred in dismissing the case for lack of subject matter jurisdiction without giving the plaintiff an opportunity to develop his evidence because the issue of jurisdiction and the merits were closely tied together and inseparable. *Id.* at 363.

The *McBeath* holding, although still good law, does not logically require that after having given the plaintiff an opportunity to

develop his evidence the trial court should still dismiss for lack of jurisdiction. This court has held that

> [w]hether a federal court has jurisdiction to decide a case and whether a plaintiff has a cause of action under a federal statute are distinct inquiries that must be addressed separately.... [T]he failure to present an adequate section 1983 claim does not strip the court of jurisdiction unless the claim is clearly immaterial, frivolous, and wholly insubstantial....

This court, consistent with the great weight of legal authority, has held that when a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.[5]

The district court therefore erred in dismissing Daniel's case for lack of subject matter jurisdiction.

### III. MOTION FOR DIRECTED VERDICT

In addition to the jurisdictional objection, defendants also properly made a motion for directed verdict at the close of the Plaintiff's case. In *Boeing Co. v. Shipman,* 411 F.2d 365 (1969) (en banc) this court set forth the following standard for ruling on a motion for directed verdict:

> [T]he court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party op-

---

failed to plead sufficiently detailed facts to overcome the qualified immunity defense available to these defendants.

**4.** *See* Fed.R.Civ.P. 16(e) (pretrial order "shall control the subsequent course of the action").

**5.** *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1346–47 (5th Cir.1985) (footnotes omitted); *see also Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Sierra Club v. Shell Oil Co.,* 817 F.2d 1169, 1172 (5th Cir.1987); *Eubanks v. McCotter,* 802 F.2d 790, 792–94 (5th Cir.1986); *Clark v. Tarrant County, Texas,* 798 F.2d 736, 741–42 (5th Cir.1986); *Williamson v.*

*Tucker,* 645 F.2d 404, 415–16 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). *But see Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980) ("A 'factual attack' ... challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.... Moreover, a 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.")

posed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. *Id.* at 374. "In passing on a motion for a directed verdict ... the court does not exercise discretion, but decides a pure question of law...." *United States v. Bucon Construction Co.*, 430 F.2d 420, 423 (5th Cir.1970). To determine whether the trial court should have granted a directed verdict we apply the same standard as the trial court would have originally. *Rosenberg v. Trautwein*, 624 F.2d 666, 669 (5th Cir.1980). We affirm the district court's reasoning and, finding Plaintiff's evidence insufficient to withstand the defendants' motion for directed verdict, dismiss the § 1983 claims under Fed.R.Civ.P. 50(a).

## IV. § 1983 CLAIMS

■ Plaintiff bases his federal law claims on 42 U.S.C. § 1983.[6] Section 1983 is not a moribund organ of our jurisprudential existence, but to recover under it the Plaintiff must prove two vital elements: (1) that he has been deprived of a right "secured by the Constitution and the laws" of the United States; and (2) that the persons depriving him of this right acted "under color of any statute" of the State of Texas.[7] In the pretrial order, Plaintiff alleged

that the defendants, acting under color of state law through a conspiracy with Justice of the Peace Alley, caused deprivations of his constitutional rights through the following three actions: (1) a deprivation of his property rights without due process of law by wrongfully entering his land and damaging his property; (2) a violation of his fourth amendment right, as incorporated into the fourteenth amendment, by having him arrested without probable cause; and (3) by having him arrested pursuant to an undated warrant.

We have performed a thorough autopsy on the facts of this case. In reporting the results of our examination we cannot say that we have found any vital § 1983 claim. We discuss Plaintiff's deprivation of property rights claim first.

### A. Deprivation of Property Rights

■ Plaintiff alleges that various defendants entered the Farm, trespassed, and destroyed real and personal property. The alleged entries and destruction, however, occurred well after the Lender became the owner of the Farm. As a result, unless the Lender's foreclosure was somehow invalid, the defendants could not have deprived Plaintiff of any property right.

Although Plaintiff does not question any of the specifics regarding the manner of the Lender's foreclosure, he did argue that the Texas nonjudicial foreclosure law is unconstitutional. The Lender foreclosed under the provisions of Tex.Rev.Civ.Stat. Ann. art. 3810 (Vernon 1966).[8] Article 3810 has been in effect, without substantial change, for many years and this court has previously found the statute constitutional.[9] We find that Plaintiff did not present

---

**6.** 42 U.S.C. § 1983 provides, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**7.** *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 223 (5th Cir.1984).

**8.** Article 3810 has been repealed, effective January 1, 1984, and recodified without substantive change at Tex.Prop.Code Ann. § 51.002 (Vernon 1984).

**9.** *See Barrera v. Security Building & Investment Corp.*, 519 F.2d 1166, 1174 (5th Cir.1975) (rejecting § 1983 claim for violation of fourteenth amendment by deprivation of property without

any evidence that the Lender's foreclosure was invalid. Because Plaintiff cannot state a claim under § 1983 for deprivation of rights that he does not have in property that he no longer owns, a directed verdict on this § 1983 claim is proper.

### B. Arrest Without Probable Cause

■■■ Plaintiff also alleges that the defendants violated his fourth amendment right, as incorporated into the fourteenth amendment, to be free from arrest without probable cause. The right to be free from arrest without probable cause is a right "secured by the Constitution and laws of the United States." [10] In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978), the Court said: "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." [11] The *Franks* Court concluded that courts could look beneath the face of a warrant and inquire into the truthfulness of any supporting affidavits.[12] In this case the district court found that the evidence, particularly Jim Judge's testimony about the falsi-

ty of his own affidavit, established a jury question on the issue of the existence of probable cause. We agree. For purposes of determining whether the defendants were entitled to a directed verdict on this § 1983 claim we therefore assume that Plaintiff was arrested without probable cause.

### 1. State action and under color of state law.

"Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.' " *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Therefore, the court could only hold the nongovernmental private defendants liable for Plaintiff's arrest without probable cause if their actions were "state action." In addition, § 1983 only protects from deprivation of a protected right if the deprivation occurs "under color of state law." *Flagg Brothers*, 436 U.S. at 155, 98 S.Ct. at 1733.

In *Flagg Brothers* the Court stated that state action and under color of state law "denote two separate areas of inquiry."

---

due process of law through foreclosure under article 3810; court found no state action in nonjudicial foreclosure under article 3810); *see also Armenta v. Nussbaum*, 519 S.W.2d 673, 679 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (rejecting claim that article 3810 violated fourteenth amendment due process clause); *Williamson v. Tucker*, 615 S.W.2d 881, 892 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.) (following *Armenta*).

**10.** *Thomas v. Sams*, 734 F.2d 185, 190–91 (5th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). The fourth amendment provides:

The right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons ... to be seized.

U.S. Const. amend. IV.

**11.** 438 U.S. at 164–65, 98 S.Ct. at 2681 (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966) *aff'd* No. 31369 (2nd Cir.1967) (unreported) (emphasis in original)).

**12.** *See* 438 U.S. at 171–72, 98 S.Ct. at 2684–85. The Court also concluded that alternative procedures, including civil suits, would not provide a sufficient remedy for untruthful affidavits. 438

U.S. at 169, 98 S.Ct. at 2683. The Court therefore provided for exclusion of evidence seized on the basis of probable cause established by a false affidavit. *Id.* at 171–72, 98 S.Ct. at 2684–85. The Court also established procedures and set out guidelines for courts to use in conducting a hearing to reexamine probable cause when a defendant challenges the truth of an affidavit offered to support a probable cause determination. *Id.; see United States v. Astroff*, 578 F.2d 133 (5th Cir.1978) (en banc) (setting forth procedures for challenges to the validity of an affidavit supporting a warrant after *Franks* ).

The pre-*Franks* Texas rule required that the court confine its inquiry to the face of the warrant. *See Oubre v. State*, 542 S.W.2d 875, 877 (Tex.Crim.App.1976). The Texas courts have since recognized and complied with the *Franks* decision. *See Dancy v. State*, 728 S.W.2d 772 (Tex.Crim.App.) *cert. denied*, —— U.S. ——, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (applying *Franks* ); *Ramsey v. State*, 579 S.W.2d 920, 923 (Tex.Crim.App.1979) (discussing *Franks* and concluding that the decision requires retroactive application). *But see Kolbert v. State*, 644 S.W. 2d 150, 152 (Tex.App.—Dallas 1982, no pet.) ("Our determination of the validity of an affidavit supporting an arrest warrant is limited to consideration of the four corners of the affidavit.").

*Id.* at 155–56, 98 S.Ct. at 1733. In *Lugar,* however, the Court said that:

> To read the "under color of any statute" language of the Act in such a way as to impose a limit on those Fourteenth Amendment violations that may be redressed by the § 1983 cause of action would be wholly inconsistent with the purpose of § 1 of the Civil Rights Act of 1871, 17 Stat. 13, from which § 1983 is derived. The Act was passed "for the express purpose of 'enforc[ing] the Provisions of the Fourteenth Amendment.'" *Lynch v. Household Finance Corp.,* 405 U.S. 538, 545, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424 (1972)....
>
> ... If the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under § 1983.

457 U.S. at 935, 102 S.Ct. at 2752. The *Lugar* Court also set forth the following "fair attribution" test for state action:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interac-

tions with the community surrounding them.

457 U.S. at 937, 102 S.Ct. at 2753–54.

*2. Misuse of a valid state statute.* A court cannot attribute private defendants' misuse of a valid state statute to the state. *Id.* at 940, 102 S.Ct. at 2755. An allegation that private defendants simply misused a valid state statute does not state a cause of action under § 1983. *Id.; Earnest v. Lowentritt,* 690 F.2d 1198, 1201 (5th Cir.1982). Therefore, logically, Jim Judge's filing of a complaint apparently containing falsehoods cannot be attributed to the state.

*3. Eliciting state authority.* Courts have recognized specific applications of the general rule regarding misuse of a valid state statute. "[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority."[13] Police reliance in making an arrest on information given by a private party does not make the private party a state actor. *Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.,* 673 F.2d 771, 772 (5th Cir.1982). "The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action."[14] The record supports the conclusion that defendant Jim Judge reported criminal activity and signed a complaint. These actions alone, however, cannot satisfy the state action requirement.

*4. Conspiracy with a state official.* In *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the plaintiff alleged that a private defendant and a police officer conspired to cause plaintiff's arrest on a false vagrancy charge. *Id.* at 149–50, 90 S.Ct. at 1604; *see Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 932 n. 15, 102 S.Ct. 2744, 2751 n. 15, 73 L.Ed.2d 482 (1982). The plaintiff did

---

**13.** *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 388 (5th Cir.1985); *see also Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir.1980) ("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority.").

**14.** *Sims v. Jefferson Downs Racing Association,* 778 F.2d 1068, 1078–79 (5th Cir.1985); *see also Grow v. Fisher,* 523 F.2d 875, 879 (7th Cir.1975) (simply filing complaint is an action of a private person not under color of state law).

not allege that the state vagrancy statute was invalid; she simply alleged that the private defendant and the police officer conspired to misuse the state vagrancy statute. The *Adickes* Court held that:

> the private party's joint participation with a state official in a conspiracy ... would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment ... rights" and action " 'under color' of law for purposes of [§ 1983]." [15]

■ In this case Plaintiff could establish state action and action under color of state law if he could prove that the remaining private defendants willfully participated in a joint action with a state official. Plaintiff alleged that Justice of the Peace Alley willfully participated in a joint action with the private defendants to have him arrested without probable cause. The district court dismissed the claim, however, because it found no evidence of any conspiracy involving Justice Alley. The district court also found no evidence that Justice Alley knew he was issuing a warrant without probable cause. We agree with the district court's conclusions. The record simply does not include any evidence of a conspiracy between the private defendants and Justice of the Peace Alley or any other state actor.

## C. Arrest Pursuant to an Undated Warrant

■ Daniel also asserts that a § 1983 claim exists because he was arrested pursuant to an undated warrant. Daniel, however, failed to introduce any undated warrant into evidence. In addition, he did not provide any evidence, other than his own testimony, that he was arrested pursuant to an undated warrant. Nevertheless he asserts, without supporting authority, that the lack of a date on the warrant violated his constitutional rights. Neither Texas law nor the fourth amendment requires a date.[16] Plaintiff introduced no evidence whatsoever to connect the remaining nongovernmental defendants with the absence of a date on the warrant. As a result, we again agree with the district court's conclusion that Plaintiff presented no evidence of a violation of his constitutional rights and no evidence that the violation by the private defendants, if any, was state action.

## V. STATE LAW CLAIMS

■ The district court did not reach Plaintiff's state law claims because it

---

**15.** *Lugar,* 457 U.S. at 931, 102 S.Ct. at 2750 (quoting *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1606). The *Lugar* Court continued: "It was with respect to this count, which did not allege any unconstitutional statute or custom, that the Court held that joint action of the private party and the police officer was sufficient to support a § 1983 suit against that party." 457 U.S. at 932 n. 15, 102 S.Ct. at 2751 n. 15; *see also Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) (in § 1983 action, dismissal of judge on immunity grounds does not require dismissal of private parties he conspired with); *Smith v. Winter,* 782 F.2d 508, 512 (5th Cir. 1986) (complaint alleging conspiracy between government official and private individuals to deprive plaintiffs of their constitutional rights alleged action under color of state law); *Russell v. Millsap,* 781 F.2d 381, 383 (5th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986); *Phillips v. Vandygriff,* 711 F.2d 1217, 1225–26 (5th Cir.1983), *cert. denied,* 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984) ("It is enough [to establish a conspiracy] that [a private party] is a willful participant in joint activity with the State or its agents."); *Taylor v. Gibson,* 529 F.2d 709, 715 (5th Cir.1976) (courts can hold private citizens "acting in conspiracy or collusion with state officials" liable under § 1983); *Gomez v. Florida State Employment Service,* 417 F.2d 569, 578 n. 34 (5th Cir.1969) ("On usual principles of agency persons may be held accountable for the acts of others under § 1983. Most times such a combination, concerted action, etc. would constitute 'conspiracy', too."); *Dinwiddie v. Brown,* 230 F.2d 465, 469 (5th Cir.), *cert. denied,* 351 U.S. 971, 76 S.Ct. 1041, 100 L.Ed. 1490 (1956) ("[T]here is no allegation that the state officers named ... acted to the plaintiffs' damage in any manner other than in the ordinary performance of their duties. Merely characterizing their conduct as conspiratorial or unlawful does not set out allegations upon which relief can be granted.").

**16.** *See* Tex.Code of Crim.Proc. § 15.02 (Vernon 1977). Since the warrant was issued only one day before Plaintiff's arrest this is not a case where the warrant was even arguably stale. *See United States v. Causey,* 834 F.2d 1179, 1185 (5th Cir.1987) (en banc) (Higginbotham, J., concurring) (court did not decide "longevity of an issued and unexecuted arrest warrant under the fourth amendment").

found that it did not have jurisdiction. Having found that the district court had jurisdiction over Plaintiff's § 1983 claims we also find that the district court had pendent jurisdiction over Plaintiff's state law claims. We do not, however, express any opinion on the appropriate disposition of Plaintiff's pendent state law claims. The district court, as an exercise of its discretion should make this decision. *Eubanks v. McCotter*, 802 F.2d 790, 794 (5th Cir.1986); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Laird v. Board of Trustees of Institutions of Higher Learning*, 721 F.2d 529, 534–35 (5th Cir.1983).

## VI. CONCLUSION

For these reasons the district court's judgment on the § 1983 claims is AMENDED to a directed verdict under Fed.R.Civ.P. 50(a) and as thus amended is AFFIRMED. The district court's dismissal of Plaintiff's pendent state law claims for lack of jurisdiction is REVERSED. The case is REMANDED to the district court for an exercise of its discretion as to the appropriate disposition of those claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.