**CROMPTON CORPORATION,**

v.

**CLARIANT CORPORATION, et al.**

**CIVIL ACTION NO. 01–84–B–M2.**

United States District Court,
M.D. Louisiana.

Aug. 7, 2002.

Bruce Victor Schewe, Phelps, Dunbar, L.L.P., New Orleans, LA, Michael D. Hunt, Jane H. Barney, Phelps, Dunbar, LLP, Baton Rouge, LA, for plaintiff.

R. Shanti Bright Brien, Peragine & Neill, L.L.C., Covington, LA, Phillip A. Wittmann, Stephanie D. Shuler, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Fredrick R. Tulley, Brandon Kelly Black, Jennifer M. Sigler, Taylor, Porter, Brooks & Phillips, Mark Raymond Beebe, Edward J. Rice, Jr., Adams & Reese, LLP, Eddy Manuel Quijano, John B. Davis, II, Amy Collier Lambert, Daniel G. Swanson, D. Jarrett Arp, Robert J. Borthwick, Jacqueline E. Coleman, Stephen C. McKenna, Davis Bradford Allgood, Antonio D. Robinson, Ryan Estes Johnson, Margaret M. Zwisler, Edward B. Schwartz, Charles E. Graf, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James D. Miller, Dina A. DeFalco, Herbert S. Washer, Haley Fabricant, Jeffrey H. Drichta, Kantrow, Spaht, Weaver & Blitzer, Lee C. Kantrow, William Scott Keaty, Kantrow, Spaht, Weaver & Blitzer, Larry Michael Roedel, Carlton Jones, III, Roedel, Parsons, Koch, Frost, Balhoff & McCollister, Baton Rouge, LA, James F. Lerner, Weil, Gotshal, & Manges LLP, New York, NY, for defendant.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the defendant Atofina S.A.'s Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction[1] and the putative defendant Daicel Chemical Industries, Inc.'s[2] Motion to Dismiss Certain Claims of Crompton Corporation for Lack of Subject Matter Jurisdiction.[3] For the reasons which follow, the motions are DENIED.

### I. Background

Crompton Corporation has filed this suit against the defendants alleging that they engaged in a conspiracy to fix prices and allocate market shares for monochloroacetic acid ("MCAA") and sodium monochloroacetate ("SMCA"). Plaintiff also contends that certain defendants agreed not to sell these products to United States consumers at all. Plaintiff further alleges that this price-fixing conspiracy has caused injury to United States customers, namely plaintiff, who purchases these products.

The defendants who have filed the motions pending before the Court are Atofina, S.A., a French citizen, and Daicel Chemicals, Inc., a Japanese citizen. These defendants argue that this Court does not have subject matter jurisdiction over plaintiff's claims and that the actions of the defendants have not in any way affected the United States market.

### II. Law and Analysis

A. Rule 12(b)(1) Motions to Dismiss

■ A motion filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the district court's subject matter jurisdiction to hear a case. The Fifth Circuit has held that lack of subject matter jurisdiction may be found in any one of these three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

---

1. Rec. Doc. No. 114.

2. Putative defendant Daicel Chemical Industries, Inc. has adopted the argument presented by the Atofina defendants in Atofina, S.A.'s

Memorandum in support of the Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction, Rec. Doc. No. 115.

3. Rec. Doc. No. 127.

supplemented by undisputed facts plus the court's resolution of disputed facts." [4]

■ The Fifth Circuit has also held that "the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[5] Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." [6]

■ When addressing a Rule 12(b)(1) motion, the district court has the authority to consider matters of fact which may be in dispute.[7] The Fifth Circuit has held that "[u]ltimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." [8] Furthermore, "we must accept all factual allegations in the plaintiff's complaint as true." [9]

B. Applicability of the Foreign Trade Antitrust Improvement Act

■ The defendants argue that the Foreign Trade Antitrust Improvement Act ("FTAIA") [10] permits subject matter jurisdiction only over foreign conduct that has a direct, substantial, and reasonably foreseeable effect in the United States, and only if such effect gives rise to a claim under the Sherman Act.[11] Defendants also contend that the purpose of this Act was to clarify that United States competition laws do not apply to "transactions that did not injure the United States economy." [12]

The defendants also argue that this Court does not have subject matter jurisdiction here because Crompton's claim is for damages for MCAA purchased abroad and for delivery outside of the United States. Defendants further argue that if the effect on United States commerce does not "give rise to" the alleged foreign damages, the United States courts have no subject matter jurisdiction. Thus, it is the defendants' position that Crompton cannot satisfy the requirement that it allege and demonstrate that its damages for purchases of allegedly price-fixed MCAA outside the United States "arose out of" that effect on United States commerce. The defendants heavily rely on the case of *Den Norske Stats Oljeselskap As v. HeereMac Vof*[13] wherein the Fifth Circuit held that antitrust laws do not cover claims by foreign plaintiffs where the situs of injury is overseas and that injury arises from effects in a non-domestic market.

The *Den Norske* court noted that "the Sherman Act itself applies only to conduct in 'trade or commerce *with* foreign nations.' [14] The commerce that gives rise to the action here—the contracting for heavy lift barge services in the North Sea—was

---

4. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001), *citing Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

5. *Id., citing McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995).

6. *Id., citing Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

7. *Id., citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).

8. *Id., citing Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998).

9. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001); *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981).

10. 15 U.S.C. § 6a.

11. *Hartford Fire Insurance Co. v. California, et al*, 509 U.S. 764, 796–97, n. 23, 113 S.Ct. 2891, 2909, 125 L.Ed.2d 612 (1993).

12. *Id.*

13. 241 F.3d 420 (5th Cir.2001).

14. *Id.,* at 426, *citing* 15 U.S.C. §§ 1,2. (Emphasis added by Fifth Circuit).

not United States commerce *between* or *among* foreign nations ... [t]herefore, we doubt that foreign commercial transactions between foreign entities in foreign waters is conduct cognizable by the federal courts under the Sherman Act." [15]

The court further stated that "while we recognize that there may be a connection and an interrelatedness between the high prices paid for services in the Gulf of Mexico and the high prices paid in the North Sea, the FTAIA requires more than a 'close relationship' between the domestic injury and the plaintiff's claim; it demands that the domestic effect 'gives rise' to the claim." [16]

The plaintiff has filed an opposition to the motions. In its opposition, Crompton Corporation argues that the facts of *Den Norske* are distinguishable from the facts in the present case because Crompton has alleged both foreign and domestic injury. Crompton notes that in the *Den Norske* case, the court dismissed the plaintiff's solely foreign claims. Crompton further contends that the FTAIA is not applicable to this case because the foreign and domestic damages suffered by plaintiff "give rise to" the plaintiff's claims.

Both parties have cited the United States Supreme Court decision of *Hartford Fire Insurance Co., et al v. California, et al,* [17] wherein the court stated that "it is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States ... Such is the conduct alleged here: that the London reinsurers engaged in unlawful conspiracies to affect the market for insurance in the United States and that their conduct in fact produced substantial effect." [18]

The *Hartford* court also held that a defendant's "express purpose to affect United States commerce and the substantial nature of the effect produced" are factors that can outweigh conflict and allow the court to exercise jurisdiction. [19] The court noted that "[w]hen it enacted the FTAIA, 96 Stat. 1246, 15 U.S.C. § 6a, Congress expressed no view on the question whether a court with Sherman Act jurisdiction should ever decline to exercise such jurisdiction on the grounds of international comity." [20]

The Supreme Court found that "[t]he only substantial question in this litigation is whether 'there is in fact a true conflict between domestic and foreign law.' " [21] The court concluded that " '[t]he fact that conduct is lawful in the state in which it took place will not, of itself, bar application of the United States antitrust laws,' even where the foreign state has a strong policy to permit or encourage such conduct. [22]

**15.** *Id.*

**16.** *Id.,* at 427.

**17.** 509 U.S. 764, 796–97, n. 23, 113 S.Ct. 2891, 2909, 125 L.Ed.2d 612 (1993).

**18.** *Id.,* at 795, 113 S.Ct. at 2909. (Citations omitted).

**19.** *Id.,* at 798, 113 S.Ct. at 2910. (Citation omitted).

**20.** *Id.;* See H.R.Rep. No. 97–686, p. 13 (1882)("If a court determines that the requirements for subject matter jurisdiction are met,

[the FTAIA] would have no effect on the court['s] ability to employ notions of comity ... or otherwise to take account of the international character of the transaction")(*citing Timberlane Lumber Co. v. Bank of America, N.T. & S.A.,* 549 F.2d 597, 613 (9th Cir. 1976)).

**21.** *Id., quoting Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa,* 482 U.S. 522, 555, 107 S.Ct. 2542, 2562, 96 L.Ed.2d 461 (1987).

**22.** *Id.,* at 799, 113 S.Ct. 2891, *quoting* Restatement (Third) Foreign Relations Law § 415, Comment *j.*

No conflict exists, for these purposes, 'where a person subject to regulation by two states can comply with the laws of both.' "[23]

The Court finds that the conspiracy alleged in the *Hartford* case is similar to the price-fixing conspiracy alleged in this case by Crompton. Crompton has alleged that a price-fixing conspiracy entered into by the defendants has substantially affected the United States market, just as the *Hartford* plaintiffs alleged that the defendants engaged in unlawful conspiracies to affect the market for insurance in the United States.

While the Court is not bound by decisions from the Northern District of California, the Court finds that the facts alleged by Crompton are so similar to those alleged in *Galavan Supplements, Ltd. v. Archer Daniels Midland Co., et al*[24] that a comparison of the two cases is warranted.

The plaintiffs in Galavan alleged various "effects" on the United States market for citric acid by defendants' price fixing, specifically that "the allocation of citric acid to and/or away from the U.S. domestic market by this worldwide conspiracy had a direct impact on the amount of citric acid sold into the United States, the amount the U.S. defendants agreed to produce in the United States, and with a resulting anticompetitive effect on U.S. commerce."[25] The *Galavan* court held that "these allegations are sufficient to confer subject matter jurisdiction."[26]

The *Galavan* court also considered the legislative history of the FTAIA, and cited the House Report on the FTAIA, which stated that:

Any major activities of an international cartel would likely have the requisite impact on United States commerce to trigger United States subject matter jurisdiction. For example, if a domestic export cartel were so strong as to have a 'spillover' effect on commerce within its country—by creating a world-wide shortage or artificially inflated world-wide price that had the effect of raising domestic prices—the cartel's conduct would fall within the reach of our antitrust laws.[27]

The House Report on the FTAIA has also supported the principle that the Clayton Act will allow recovery for foreign damages where the illegal foreign conduct has had a substantial impact on domestic commerce. Under the heading of Section 6 entitled "Clayton Act Amendments," the Report states in pertinent part the following:

The full committee added language to the Sherman and FTC Act amendments to require that the 'effect' providing the jurisdictional ne'us must also be the basis for the injury alleged under the antitrust laws. This does not, however, mean that the impact of the illegal conduct must be experienced by the injured party within the United States. As previously set forth, it is sufficient that the conduct providing the basis of the claim has had the requisite impact on the domestic or import commerce of the United States, or, in the case of conduct lacking such impact, on an export opportunity of a person doing business in the United States.[28]

Therefore, under the facts alleged in the complaint, the Court finds that the FTAIA

23. *Id., quoting* Restatement (Third) Foreign Relations Law § 403, Comment *e*.

24. 1997 WL 732498 (N.D.Cal.1997).

25. *Id.,* at *2.

26. *Id.*

27. *Id.,* at *3, *quoting* H.R.Rep. No. 97–686, § III.E.2 (1982).

28. H.R.Rep. No. 97–686 at *11–12, 1982 U.S.C.C.A.N. 2487, *2496.

does not shield the defendants from subject matter jurisdiction for an alleged violation of the Sherman Act. It is clear to the Court that the price-fixing conspiracy alleged by the plaintiff is a transaction which would injure the United States economy.

### C. Dismissal of Cases Brought Pursuant to the Sherman Act

■ The Fifth Circuit has held that "any challenge to subject matter jurisdiction in a Sherman Act case is necessarily resolved by answering the following questions: Can Congress prohibit the challenged conduct under the Commerce Clause? If so, then the conduct is within the jurisdictional reach of the Sherman Act."[29]

■ The Fifth Circuit further stated that it is well-established that "premature dismissals of antitrust claims for lack of subject matter jurisdiction are not favored 'where the factual and jurisdictional issues are completely intermeshed ...'[30] In such situations 'the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other.'[31] When jurisdictional issues are intertwined with the merits, the adjudication of the jurisdictional issue in accordance with the procedure under a 12(b)(1) motion fails to offer the procedural safeguards attendant upon proceedings under a 12(b)(6) motion or a motion for summary judgment under Rule 56."[32]

■ The Court finds that this case is one where "factual and jurisdictional issues are completely intermeshed." The Court further finds that it would be inappropriate to dismiss these claims for lack of subject matter jurisdiction when more jurisdictional discovery is warranted. Accepting the allegations in the plaintiff's complaint as true, the Court finds that the defendants' motions to dismiss should be denied.

### III. Conclusion

The Court finds that the plaintiff has sufficiently alleged both domestic and foreign injury such that the FTAIA will not shield the defendants from the exercise of subject matter jurisdiction. Based on the evidence now before the Court and knowing that the issue of subject matter jurisdiction can be raised at any time by any party or the Court on its own motion, the Court finds that it has subject matter jurisdiction in this case.[33]

Therefore:

IT IS ORDERED that the defendant Atofina S.A.'s Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction[34] shall be DENIED.

IT IS FURTHER ORDERED that the putative defendant Daicel Chemical Industries, Inc.'s Motion to Dismiss Certain Claims of Crompton Corporation for Lack of Subject Matter Jurisdiction[35] shall be DENIED.

---

**29.** *Chatham Condominium Associations v. Century Village, Inc., et al,* 597 F.2d 1002, 1008 (5th Cir.1979).

**30.** *Id.,* at 1011, *quoting McBeath v. Inter-American Citizens for Decency Committee,* 374 F.2d 359, 363 (5th Cir.1967), *cert. denied,* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967).

**31.** *Id., quoting McBeath* 374 F.2d at 363.

**32.** *Id.*

**33.** If after addition discovery, the parties or the Court question subject matter jurisdiction, the Court will revisit its subject matter jurisdiction at that time.

**34.** Rec. Doc. No. 114.

**35.** Rec. Doc. No. 127.