[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-14742
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00215-CV-OC-10-GRJ

RONALD NORMAN DYE,

Plaintiff-Appellant,

versus

WILL RADCLIFF,
individually,

Defendant-Appellee,

R. KEVIN STEINKE,
individually and as an officer for the
Florida Fish and Wildlife Conservation
Commission, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(March 30, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant, Ronald Norman Dye, appeals the district court's order granting summary judgment on his 42 U.S.C. § 1983 claim in favor of defendant-appellee, Will Radcliff, and remanding all his remaining state law claims. Because we find Dye has failed to point to any evidence that Radcliff acted under color of state law, we AFFIRM.

## I. BACKGROUND

This appeal arises out of a dispute between neighboring property owners along the Emeralda Marsh in Florida. Radcliff began to complain to authorities at the Florida Fish & Wildlife Conservation Commission ("Commission") about unauthorized hunting on his land after he had terminated Dye's employment as his ranch manager in November 2000. R1-34, Steinke Affidavit ¶ 6. He repeatedly complained about such unauthorized hunting particularly by Dye and his son, Keith Dye. Id. Some of the complaints were registered by Radcliff's new ranch manager, Larry Gephardt. Id., Fisher Affidavit ¶ 6.

After one such complaint, Commission officers went out to Radcliff's property on 1 December 2001 to investigate. After hearing gunshots, they stopped Dye and his son who were traveling through a passage of water called the

"Narrows" with two dead deer in their air boat. They denied having been on Radcliff's property at any time. Dye's son was cited for hunting without a license but both Dyes were permitted to leave. The officers warned them, however, that they would be investigating the issue of trespassing. Keith Dye later admitted responsibility for killing two other deer found on Radcliff's property and was charged with exceeding the legally prescribed hunting limit.

Later in the day, Gephardt informed the officers that the "Narrows" was within the boundaries of Radcliff's ranch and that Radcliff wanted to press charges for trespassing. The Commission proceeded, in cooperation with the Lake County Geographic Information System Division and the Department of Environmental Protection's Bureau of Surveying and Mapping and the State Cadastral Surveyor, to determine whether the "Narrows" and the location where the deer were found were navigable waters and were therefore considered "sovereignty lands," a determination that would negate the possibility of trespass. After receiving a report from Terry Wilkinson, Chief of the Bureau of Surveying and Mapping, which concluded that the "Narrows" did not constitute navigable waters, the Commission forwarded a copy of that report and its own report on the 1 December 2001 air boat stop to the State Attorney's office. On 4 March 2002, Ronald Dye was charged with armed trespass. The charge was later dismissed by the state trial

3

court, which concluded that Dye had a right to travel through the "Narrows" up to the point of the high water mark both because he was a riparian property owners of lands adjacent to the Emeralda Marsh and because the Dye family's hostile, continuous, and adverse use of the "Narrows" had established a prescriptive easement.

Dye alleges that his prosecution for armed trespass was malicious and resulted from a conspiracy among Radcliff and officers of the Commission to deprive him of his freedom and, eventually, his property. The district court found no evidence in the record of any such conspiracy and accordingly granted summary judgment on the grounds that Dye had failed to establish that Radcliff had acted under color of state law, as would be required for a successful claim under 42 U.S.C. § 1983.

## II. DISCUSSION

"We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion." Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1314-15 (11th Cir. 2000). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

4

judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)).

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003). However, "[p]rivate parties who corruptly conspire" with state officials in a malicious prosecution also act under color of state law for purposes of § 1983. Dennis v. Sparks, 449 U.S. 24, 29, 101 S. Ct. 183, 187 (1980). A "plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." NAACP. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605 (1970). An allegation that a private defendant misused a valid state statute does not state a cause of action under § 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 940-41, 102 S. Ct. 2744, 2755-56 (1982). Therefore, we join other circuits in saying that a private party does not act under color of state law merely by calling upon official state authority

5

when he does not also join in the exercise thereof.[1]

Our de novo review of the record reveals no error in the district court's finding that there is no evidence that Radcliff was involved with the investigation regarding the navigable waters issue and that there is no evidence of any agreement or plan between Radcliff and the Commission officers to arrest and prosecute Dye unlawfully. Dye's brief on appeal points to ample evidence of Radcliff's animosity toward Dye, his insistent complaints to the Commission, his own knowledge about trespass law, his expressed desire to have Dye prosecuted for trespass, and his alleged financial motives for doing so. Dye also points to evidence of his actual innocence. Although this may bear on Dye's state law claims, none of it demonstrates the conspiracy necessary for a successful § 1983 claim.

Dye also makes much of his assertion that Lt. Jeff Hahr of the Commission did know the general rule that boaters were allowed to go as far as the high water mark of navigable waters. He points to no evidence, however, that any of the

---

[1]See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999) (summoning police officer and providing background information does not make summoner a joint participant in state action); Daniel v. Ferguson, 839 F.2d 1124, 1130 (5th Cir. 1988) (eliciting action by state authority is not action under color of state law); Lee v. Town of Estes Park, Colo., 820 F.2d 1112, 1115 (10th Cir. 1987) (finding no state action where defendant reported criminal activity, even if "insistent" about pressing charges as long as authorities make determinations); Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980) ("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority.").

Commission officers knew whether the "Narrows" were technically navigable, and if so, where the high water mark lay. In fact, he admitted in his deposition that he did not believe any of the officers "knew where the ordinary high watermark was when they stopped him on December 1st of 2001." R3-36 at 41. Further, Dye himself admitted during his deposition that he did not "feel that [the Commission Officers] were conspiring with Radcliff," only that Radcliff was using the Commission to leverage him to sell his land or "destroy [him]." Id. at 78-79. In his brief, Dye fails to point to any specific evidence of a conspiracy. He refers generally to the "totality of the circumstances" and argues that the victim is often the last to discover a conspiracy. Appellant's Br. at 27. This, though perhaps true, is not evidence of a conspiracy in this case and, thus, fails to raise a genuine issue of material fact.

### III. CONCLUSION

Dye appeals the district court's grant of summary judgment in favor of Radcliff as to Dye's § 1983 claim. Dye has failed to point to any evidence raising a genuine issue of material fact as to whether Radcliff acted under color of state law. Accordingly, we AFFIRM.